**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| HONORIO LATYR PEREIRA BARRETO,<br><br>Petitioner,<br>v.<br><br>STATE OF ALASKA, *Department of Corrections*, et al.,<br><br>Respondents. | Case No. 3:26-cv-00235-SLG |

**ORDER ON RENEWED PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court at Docket 34 is Petitioner Honorio Latyr Pereira Barreto's Renewed Request for Writ of Habeas Corpus. Federal Respondents filed a return and moved to dismiss the petition at Docket 35. Petitioner replied to the return and responded in opposition to the motion to dismiss at Docket 41.

**BACKGROUND**

The Court assumes the reader's familiarity with the facts set forth in its prior order at Docket 26. The facts relevant to the present renewed petition for habeas relief are summarized as follows:

Petitioner, a citizen of Senegal, legally entered the United States in late 2019 or early 2020[1] and was granted conditional permanent resident status in 2020.[2] In

[1] Docket 1 ¶ 17.

[2] Docket 1 ¶ 17.

September 2022, Petitioner timely filed a Form I-751, Petition to Remove Conditions on Residence.[3] In October 2024, United States Citizenship and Immigration Services ("USCIS") deemed Petitioner's Form I-751 abandoned and terminated Petitioner's conditional permanent resident status.[4] In June 2026, USCIS initiated removal proceedings against him.[5] Also in June 2026, Petitioner filed a new Form I-751 petition to remove the conditions on his residence.[6]

Petitioner was arrested on April 15, 2023 and again on January 22, 2024; he was charged in both cases with misdemeanor impaired-driving offenses.[7] In November 2024, he began participating in Anchorage Municipal Wellness Court.[8] According to his public defender, Randall Patterson, the program requires regular meetings with a probation officer, near daily treatment meetings, random urinalysis, and court appearances every other week.[9] Mr. Patterson states that Petitioner has complied with these requirements and that, upon completion of the

[3] Docket 1 ¶ 18.

[4] Docket 9-3 at 1.

[5] Docket 9-4 at 1.

[6] Docket 11-2 at 1.

[7] Docket 34 at 4-5.

[8] Docket 34 at 3-4.

[9] Docket 10-1 at 2.

program, the municipal prosecutor intends to reduce his cases to one count requiring restitution.[10]

On June 11, 2026, Immigration and Customs Enforcement ("ICE") agents detained Petitioner as he was leaving a Wellness Court hearing in Anchorage, Alaska and has been detained since that time.[11] Petitioner commenced this action the following day by filing a Petition for Writ of Habeas Corpus.[12]

On June 25, 2026, the Court granted habeas relief in part.[13] The Court ordered that within 7 days of Petitioner's written request, Respondents shall provide him with an individualized bond hearing that comports with the requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011), including that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond."[14] On June 30, 2026, Respondents moved for reconsideration, asserting that "the Court's order requiring a bond hearing compliant with *Singh* was error in light of the Ninth Circuit's holding in *Rodriquez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022)." The

[10] Docket 10-1 at 2.

[11] Docket 34 at 2.

[12] Docket 1.

[13] Docket 26.

[14] Docket 26 at 13.

Court granted Respondents' motion and amended its June 25, 2026 Order as follows:

> Within seven (7) days of Petitioner's written request for a bond hearing, Respondents shall provide Petitioner with an individualized bond hearing before a neutral immigration judge at which Petitioner shall be permitted to appear and participate, either in person or by contemporaneous video conference. The bond hearing shall be conducted in accordance with 8 C.F.R. §§ 236.1, 1236.1, and 1003.19. A contemporaneous record of the bond hearing shall be made to facilitate any appeal. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge shall consider Petitioner's financial circumstances and alternative conditions of release.[15]

The Court also ordered Respondents to file a notice of compliance within two business days of Petitioner's bond hearing.[16]

On July 2, 2026, the Immigration Judge ("IJ") held Petitioner's bond hearing.[17] Petitioner submitted documentary evidence concerning his treatment, employment, and community support and sought to present testimony from himself, his public defender, his probation officer, the prosecutor in his state cases, and other supporting witnesses.[18] The IJ declined to receive any testimony and instead directed counsel to proffer the evidence;[19] the IJ stated she accepted

---

[15] Docket 26 at 13-14; Docket 31 at 9.

[16] Docket 31 at 10.

[17] Docket 45-1 at 2.

[18] Docket 45-1 at 3-4; Docket 41-1 at 5, 7-8.

[19] Docket 41-1 at 5, 8.

counsel's proffer.[20] At the hearing's conclusion, the IJ found Petitioner was a danger to the community but not a flight risk, and denied bond.[21]

On July 10, 2026, Petitioner filed a Renewed Request for Writ of Habeas Corpus, asserting that the IJ had abused her discretion by failing to meaningfully consider Petitioner's rehabilitation evidence and violated due process by excluding all testimony.[22] Federal Respondents opposed the petition and moved to dismiss,[23] and Petitioner filed a reply to the petition and opposition to the motion to dismiss.[24] On September 8, 2026, Petitioner filed the IJ's written decision denying bond.[25]

Petitioner remains detained at the Anchorage Correctional Center, of which Respondent Arnaldo Hernandez is the Superintendent.[26]

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241(c)(3), a district court may grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or

---

[20] Docket 41-1 at 7.

[21] Docket 41-1 at 10; Docket 45-1 at 4-5.

[22] Docket 34 at 13-16.

[23] Docket 35 at 1.

[24] Docket 41 at 1.

[25] Docket 45-1.

[26] Docket 45 at 9.

laws or treaties of the United States." "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."[27] Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."[28] Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction.[29] A writ of habeas corpus is "available to every individual detained within the United States,"[30] and "the Fifth Amendment entitles aliens to due process of law in deportation proceedings."[31]

## DISCUSSION

Petitioner seeks his immediate release from custody, asserting that the IJ abused her discretion in denying bond and violated due process by refusing to permit him and his witnesses to testify.[32] Respondents maintain that this Court lacks jurisdiction to review the bond denial, that Petitioner should be required to

---

[27] *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

[28] *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).

[29] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

[30] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).

[31] *Demore*, 538 U.S. at 523 (2003).

[32] Docket 34 at 13-18.

exhaust his administrative remedies, and that Petitioner received adequate process.[33]

### I. Jurisdiction

Federal Respondents contend that 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) require Petitioner to raise his claims in a petition for review before the Court of Appeals, rather than in a habeas proceeding before this Court.[34] However, § 1252(a)(5) governs "judicial review of an order of removal." Petitioner does not seek review of such an order. Section 1252(b)(9) likewise does not require every claim associated with removal proceedings to await review of a final removal order. In *Jennings v. Rodriguez*, the Supreme Court held that § 1252(b)(9) does not bar challenges to continued detention where a petitioner is not seeking review of a removal order or challenging the process by which his removability would be determined.[35] As Petitioner notes, bond proceedings are "separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding."[36] Petitioner's claims here solely concern the legality of his continued detention.

8 U.S.C. § 1226(e) governs judicial review of Petitioner's bond hearing and provides generally that "custody determinations within the discretion of the

---

[33] Docket 35 at 3-10.

[34] Docket 35 at 2.

[35] 583 U.S. 281, 294-95 (2018).

[36] Docket 41 at 9 (quoting 8 C.F.R. § 1003.19(d)).

Attorney General are not subject to judicial review."[37] "That provision does not, however, preclude habeas jurisdiction over constitutional claims or questions of law. [C]laims that the discretionary [bond] process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241."[38] Moreover, "the determination [of] whether an alien is 'dangerous' for immigration-detention purposes is a mixed question of law and fact and is reviewable as a 'question of law.'"[39] The Court reviews that determination for abuse of discretion and reviews the applicable burden of proof as a question of law.[40]

Here, Petitioner challenges the IJ's dangerousness determination as an abuse of discretion, asserting that the IJ failed to meaningfully consider his rehabilitation evidence and misapplied *Matter of Siniauskas*.[41] Petitioner also contends that the IJ denied him due process by refusing to permit him and his witnesses to testify and failing to act as a neutral decisionmaker.[42] These challenges to the application of the dangerousness standard and the constitutional

---

[37] *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017).

[38] *Id.* (alterations in original) (internal citations and quotation marks omitted).

[39] *Martinez v. Clark*, 124 F.4th 775, 779 (9th Cir. 2024) (citing *Singh*, 638 F.3d at 1208.

[40] *Id.* at 784-85.

[41] Docket 34 at 8, 13-16; Docket 41 at 15-16.

[42] Docket 34 at 16-18; Docket 41 at 38-40.

adequacy of the hearing fall within the Court's habeas jurisdiction.[43] The Court also retains authority to determine whether the hearing complied with its prior orders partially granting habeas relief.[44]

**II. Exhaustion**

Respondents also contend that Petitioner should be required to exhaust his administrative remedies before seeking habeas relief.[45] In the immigration habeas context, administrative exhaustion is prudential, not jurisdictional.[46] Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review."[47] Even when those considerations favor exhaustion, a court may excuse the requirement where "administrative remedies are inadequate or not efficacious" or "irreparable

---

[43] *Martinez*, 124 F.4th at 783-85; *Hernandez*, 872 F.3d at 987-88.

[44] *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011).

[45] Docket 35 at 5-9.

[46] *See Hernandez*, 872 F.3d at 988.

[47] *Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).

injury will result."[48] Exhaustion is also excused when the petitioner may be prejudiced by "an unreasonable or indefinite timeframe for administrative action."[49]

Here, Petitioner challenges the adequacy of the bond hearing provided pursuant to this Court's order and has pursued an administrative appeal.[50] Recent government data reflects an average processing time of 204 days for BIA bond appeals.[51] Requiring Petitioner to await completion of that process would prolong his detention while further disrupting his participation in Wellness Court.[52] Given the potential delay and the ongoing interruption of Petitioner's participation in Wellness Court, the Court concludes that administrative review would not provide sufficiently timely relief to prevent irreparable injury and therefore waives prudential exhaustion.[53]

**III. The Bond Determination**

Petitioner asserts that the IJ failed to "meaningfully engage" with his evidence or provide a "reasoned explanation" for disregarding it.[54] Petitioner

---

[48] *Id.* at 989 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

[49] *McCarthy v. Madigan*, 503 U.S. 140, 146-47 (1992).

[50] Docket 41 at 18, 27; Docket 45-1 at 2.

[51] *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d, 1297, 1307 (W.D. Wash. 2025), *aff'd*, 183 F.4th 1160 (9th Cir. 2026).

[52] Docket 41 at 23

[53] *Laing*, 370 F.3d at 1000.

[54] Docket 34 at 14.

further contends that the denial of bond was an abuse of discretion given the "clear and uncontradicted evidence of Petitioner's rehabilitation."[55] Federal Respondents maintain that Petitioner's "claims are simply rooted in disagreement with the determination."[56]

The Court reviews de novo the legal standard governing Petitioner's burden of proof at the bond hearing[57] and reviews the dangerousness determination for abuse of discretion.[58] Although the Court may not independently reweigh the evidence, it may determine whether the IJ evaluated that evidence under the correct legal standard.[59]

Under the ordinary procedures governing detention pursuant to § 1226(a), Petitioner bears the burden of demonstrating by a preponderance of the evidence that he is neither a danger to the community nor a flight risk.[60] However, the IJ's written memorandum expressly assigns Petitioner a burden of proof "by clear and convincing evidence."[61] The IJ cites *Matter of Siniauskas* in support of that

---

[55] Docket 34 at 14.

[56] Docket 35 at 10.

[57] *Singh*, 638 F.3d at 1202.

[58] *Martinez*, 124 F.4th at 784-86.

[59] *Id.* at 785.

[60] *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

[61] Docket 45-1 at 3.

heightened burden, but that decision requires a detainee to establish the absence of dangerousness and flight risk "to the satisfaction of the Immigration Judge and the Board"; it does not prescribe a clear and convincing standard.[62]

That error bears directly on Petitioner's challenge to the IJ's consideration of his rehabilitation evidence. Petitioner presented evidence that, since entering Wellness Court in November 2024, he had complied with treatment requirements, undergone random testing, and attended over 50 separate court hearings.[63] Petitioner's counsel further proffered that Petitioner's probation officer would testify that he was neither a flight risk nor a danger to the community and that the municipal prosecutor also wished to testify on Petitioner's behalf.[64] That proposed evidence would have directly addressed whether Petitioner's rehabilitation and sobriety had reduced the danger associated with Petitioner's prior misconduct. Requiring clear and convincing evidence increased the showing necessary for Petitioner to establish that he no longer presented such a danger. Although the record before the IJ contained adverse evidence concerning Petitioner's previous misconduct, it also contained substantial evidence of subsequent treatment and rehabilitation. The IJ's decision does not demonstrate that the IJ would have

---

[62] Docket 45-1 at 3; *Matter of Siniauskas*, 27 I. & N. Dec. 207, 207-08 (BIA 2018).

[63] Docket 34 at 3-4; Docket 45-1 at 4.

[64] Docket 41-1 at 7.

reached the same conclusion to deny bond under the less demanding preponderance standard.[65] The Court therefore concludes that the IJ applied the incorrect legal standard of proof and that the error was prejudicial. The IJ's resulting bond denial determination therefore cannot sustain Petitioner's continued detention.

### IV. Due Process

Petitioner separately contends that the IJ denied him due process by refusing to permit him and his witnesses to testify.[66] According to Petitioner, the IJ's refusal prevented him from explaining the circumstances surrounding his drinking, testifying that he had consumed no alcohol since November 2024, and presenting evidence on the changes he had made in the two years since his arrests through treatment and community support.[67]

Due process guarantees "a reasonable opportunity to present evidence on [one's] behalf."[68] A petitioner denied that opportunity must establish prejudice by showing that "the outcome of the proceeding may have been affected by the alleged violation."[69] Here, when counsel attempted to examine Petitioner, the IJ

---

[65] *See Singh*, 638 F.3d at 1205.

[66] Docket 34 at 5.

[67] Docket 34 at 7.

[68] *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000).

[69] *Id.*

stated: “Counsel, we’re not taking testimony from the Respondent. Please offer the evidence as to *Guerra* factors.”[70] When counsel explained that additional witnesses were standing by, the IJ responded: “We are running out of time. I’ve given an excessive amount of time here,” and directed counsel to summarize the evidence.[71] Counsel renewed her request at the hearing’s conclusion, but the IJ again refused: “Counsel, we’ve been proceeding for an hour. It is noon. The hearing is completed.”[72]

Respondents assert that Petitioner was afforded due process because the IJ “accepted all the proffers from Petitioner’s counsel.”[73] However, accepting counsel’s summaries did not cure the categorical exclusion of all testimony bearing directly on Petitioner’s present dangerousness. The proposed testimony would have allowed Petitioner and those familiar with his rehabilitative efforts to explain

---

[70] Docket 41-1 at 5; *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006) (“Immigration Judges may look to a number of factors in determining whether an alien merits release from bond, as well as the amount of bond that is appropriate. These factors may include any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien’s length of residence in the United States; (3) the alien’s family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien’s employment history; (5) the alien’s record of appearance in court; (6) the alien’s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien’s history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien’s manner of entry to the United States.”).

[71] Docket 41-1 at 8.

[72] Docket 41-1 at 10.

[73] Docket 35 at 9.

the basis for their assertions of lack of dangerousness and respond to the concerns supporting continued detention. For example, counsel specifically sought to illicit testimony from Petitioner's public defender concerning compliance with Wellness Court requirements and from his probation officer that "he is not a flight risk and he is not a danger to the community."[74] Because that testimony could have affected the outcome, the Court concludes that its exclusion deprived Petitioner of a meaningful opportunity to present his case and violated due process. And the exclusion of any testimony by Petitioner also deprived him of meaningful participation at that hearing contrary to this Court's prior order.[75]

In short, where all of the Wellness Court participants, including the prosecutor and the state court judge who ordered Petitioner's release, had determined that Petitioner did not represent a danger to the community at this time, the IJ abused her discretion in her denial of bond.

**V. Remedy**

Having found that the IJ applied an incorrect standard of proof and deprived Petitioner of a meaningful opportunity to present his case at the bond hearing, the Court must determine the appropriate remedy. "Federal courts have a fair amount

---

[74] Docket 41-1 at 7.

[75] Docket 26 at 13 ("Respondents shall provide Petitioner with an individualized bond hearing before a neutral immigration judge at which Petitioner shall be permitted to appear and participate, either in person or by contemporaneous video conference.").

of flexibility" in fashioning habeas relief.[76] Respondents were accorded the opportunity to provide a legally adequate bond hearing pursuant to this Court's previous orders. But the resulting hearing imposed an impermissibly heightened burden on Petitioner and excluded material testimony concerning his rehabilitation. Ordering another hearing before an IJ at this point would prolong Petitioner's detention and the resulting interruption of his participation in Wellness Court while affording Respondents another opportunity to provide the process already ordered. Under these circumstances, the Court concludes that Petitioner's immediate release, subject to reasonable, noncustodial conditions of supervision, is the appropriate remedy.

## CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED as follows:

1. The Renewed Petition for Writ of Habeas Corpus at Docket 34 is **GRANTED**.

2. Respondents shall release Petitioner from custody on appropriate conditions of supervision within **twenty-four (24) hours** of this Order.

3. Respondents must file a status update within **two (2) business days** of this Order, confirming that Petitioner has been released from custody.

[76] *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005).

4. Petitioner shall not be re-detained without at least **seven (7) days'** advance written notice and a pre-deprivation hearing before a neutral decisionmaker, unless probable cause exists for believing Petitioner has committed or is attempting to commit a criminal offense.

5. Federal Respondents' Motion to Dismiss at Docket 35 is **DENIED**.

6. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.[77]

DATED this 15th day of October, 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[77] *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).